IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BP AMERICA INC., et al.          :        CIVIL ACTION
                                 :
            v.                   :
                                 :
DIWAN PETROL INC.                :        NO. 21-2437

MEMORANDUM INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW

Bartle, J.                                      May 17, 2022

        Before the court are the motion and renewed motion of
plaintiffs BP America Inc. and BP Products North America Inc.
for contempt to enforce this court's August 31, 2021 order
enjoining defendant Diwan Petrol Inc. from using plaintiffs'
trademarks without authorization.

        Plaintiffs brought suit against defendant Diwan
Petrol Inc. seeking injunctive and declaratory relief under
federal trademark law for unauthorized use of plaintiffs'
trademarks, including BP's name, trade dress, and design marks,
at defendant's gasoline service station in Bensalem,
Pennsylvania.  Specifically, plaintiffs alleged trademark
infringement in violation of 15 U.S.C. § 1114 and state common
law, unfair competition in violation of 15 U.S.C. § 1125(a) and
state common law, and dilution in violation of 15 U.S.C. 1125(c)
and 54 Pa. Cons. Stat. § 1124.

Despite proper service, defendant failed to enter an appearance or answer the complaint.  The Clerk of Court entered default against defendant on July 7, 2021, and this court granted plaintiffs' motion for default judgment for injunctive and declaratory relief against defendant on August 31, 2021. The court on November 5, 2021 ordered defendant to pay plaintiffs $632 for costs of the suit and $8,878 for attorney fees.

The court held a hearing on the motion and renewed motion for contempt on May 9, 2022.  Despite service from both the court and plaintiffs of notice of the hearing, defendant did not appear.  The court makes the following findings of fact and conclusions of law.  All findings of fact are by clear and convincing evidence.

Civil contempt is "remedial, and for the benefit of the complainant." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994).  Civil contempt sanctions are calculated "to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience."  Robin Woods Inc. v. Woods, 28 F.3d 396, 400 (3d Cir. 1994).  The elements necessary for a finding of civil contempt are well established.  A court must find "that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order."  John T.

ex rel. Paul T. v. Del. Cty. Intermediate Unit, 318 F.3d 545, 552 (3d Cir. 2003).  These elements "must be proven by 'clear and convincing evidence,' and ambiguities must be resolved in favor of the party charged with contempt."  Id.

Before a finding of contempt is made, "due process . . . require[s] notice and a hearing . . . so that the parties 'have an opportunity to explain the conduct deemed deficient . . . and that a record will be available to facilitate appellate review.'"  Harris v. City of Phila., 47 F.3d 1311, 1322 (3d Cir. 1995).  Once parties have notice that contempt proceedings have been instituted against them, however, they may waive their right to be present at the contempt hearing by "fail[ing] to avail [themselves] of the opportunity at a meaningful time and in a meaningful manner for a hearing."  Roe v. Operation Rescue, 920 F.2d 213, 218 (3d Cir. 1990).

Defendant, as noted, operates a gas station in Bensalem, Pennsylvania which supplied BP gasoline to its customers pursuant to a contract with BP until that contract terminated on February 29, 2020.  BP no longer supplies gasoline to defendant's station.  Defendant, however, has continued to operate the station and use BP's registered trademarks since the expiration of the contract.

On August 31, 2021, this court permanently enjoined defendant from using the following trademarks of BP:

3

| MARK | REG. NO. | REG. DATE | RELEVANT GOODS/ SERVICES |
|---|---|---|---|
|  | 2,898,527 | November 2, 2004 | Retail store services featuring convenience store and gasoline in Class 35 |
|  | 3,064,674 | March 7, 2006 | Management of procurement in the nature of purchasing fuel and products for sale in a convenience store situation on a service station; services relating to filling stations and shops located on filling stations, namely, retail store services featuring convenience store items and gasoline; retail convenience store services; retail gasoline supply services; retail franchising services in the establishment or operation of service stations, retail convenience stores situated on service station sites, and car washes in Class 35 |
|  | 3,405,599 | April 1, 2008 | Fuels, namely, gasoline, diesel, natural gas and liquid gas in Class 4<br>Business operation of service stations; the bringing together for the benefit of others, of a variety of goods, enabling customers to conveniently view and purchase those goods in a convenience store, a filling station or in a convenience store located in a filling station in Class 35 |
|  | 3,515,941 | October 14, 2008 | Fuel for motor vehicles, namely, gasoline and diesel fuel in Class 4 |

| MARK | REG. NO. | REG. DATE | RELEVANT GOODS/ SERVICES |
|---|---|---|---|
| | | | Retail store services featuring convenience store items and gasoline; retail gasoline supply services in Class 35 |
| BP | 5,703,325 | March 19, 2019 | Fuels; biofuels; liquid fuels; solid fuels; gas fuels in Class 4<br><br>Vehicle service stations; vehicle fueling stations in Class 37 |
| *Invigorate* | 3,580,392 | February 24, 2009 | Non-chemical gasoline additives in Class 4 |
| INVIGORATE | 3,449,716 | June 17, 2008 | Fuels, namely, gasoline; Vehicle service stations in Class |
| AMOCO | 1,353,619 | August 13, 1985 | Gasoline, diesel fuel in Class 4 |
| AMOCO | 167,769 | May 18, 1923 | Gasoline, motor fuels in Class 4 |
| SILVER | 2,238,762 | April 13, 1999 | Gasoline in Class 4 |
| ULTIMATE | 2,949,428 | June 7, 2005 | Gasoline in Class 4 |

The court ordered defendant to comply within thirty days of receiving notice of the order.  Plaintiffs personally served defendant with the order on September 1, 2021.  Despite the court's order, defendant continued to use the enjoined trademarks well past the thirty-day deadline of October 1, 2021.

At the May 9, 2022 contempt hearing, the court heard testimony from Michael Doyle, the process server hired by plaintiffs to serve defendant.  Doyle visited the station on

multiple occasions and documented what if any changes had
occurred in removing the enjoined trademarks.  When Doyle
visited the station on November 26, 2021, defendant had not made
any efforts to comply with this court's August 31, 2021 order.
Plaintiffs subsequently filed a motion for contempt on December
2, 2021.

When plaintiffs served defendant with its motion for
contempt, defendant began making progress to remove the
protected trademarks, such as spray painting over the BP logo
and lettering on the station and pumps.  Plaintiffs had multiple
communications with agents for defendant and provided defendant
with a checklist of what to remove from its premises.  An agent
of defendant working on the premises agreed to remove the
enjoined trademarks as did the owner of the land on which the
station sits.  As progress was being made, plaintiffs on January
4, 2022 requested that the court stay the hearing on its motion
for contempt scheduled for January 5, 2022 so that defendant
could have time to come into compliance with this court's August
31, 2021 order.

Defendant, however, eventually ceased any further
efforts at coming into compliance with this court's order.
After repeated requests for removal, defendant still has not
removed the words "ultimate," "silver," "invigorate," and
"AMOCO" from its pumps and large street sign as required by the

injunction.  It also has not removed the protected green coloring on the station's convenience store, the pumps, the signage, and the trash cans.  Plaintiffs therefore filed a renewed motion for contempt on April 25, 2022 seeking to enforce the court's August 31, 2021 order.

As previously discussed, a party who is absent from the contempt hearing may still be held in contempt as long as the party had adequate notice of the proceedings and waives the right to be present by failing to avail themselves of the opportunity to be heard.  See Roe, 920 F.2d at 218.  On April 25, 2022, this court ordered that a hearing on plaintiffs' renewed motion for contempt be held on May 9, 2022 and that defendant "is ordered to appear and show cause as to why it failed to comply with this court's August 31, 2021 order permanently enjoining it from using the marks therein described."  A copy of the August 31, 2021 order was included.

The court ordered plaintiffs to serve defendant promptly with a copy of this order and ordered the clerk's office to mail the order first-class to defendant.  On April 26, 2022, the clerk's office mailed the order to defendant. However, the envelope was later returned by the postal service marked as "REFUSED."  Prior to the hearing, plaintiffs certified that a copy of the order had been sent via first-class mail to defendant on April 25, 2022.  That same day Doyle also

7

personally served an agent of defendant with the renewed motion for contempt.

Defendant therefore had adequate notice of the contempt hearing and this court's order to appear as required by due process.  It waived its right to be present by failing to appear.  As defendant was afforded sufficient notice of the hearing and chose not to attend, any ruling applicable to it does not offend due process.

As previously stated, to hold defendant in contempt, the court must find by clear and convincing evidence "that (1) a valid court order existed, (2) the defendant[s] had knowledge of the order, and (3) the defendant[s] disobeyed the order."  John T. ex rel. Paul T., 318 F.3d at 552.  There is clear and convincing evidence that a valid court order exists in the form of this court's August 31, 2021 order enjoining defendant from using plaintiffs' trademarks as detailed therein.

There is also clear and convincing evidence that defendant had knowledge of this order.  Plaintiffs filed certificates of service as to both the first motion for contempt and the renewed motion for contempt both of which included the August 31, 2021 order.  Defendant also clearly knew of the order as it removed some of the protected trademarks to come into compliance with the order.

Finally, there is clear and convincing evidence that defendant disobeyed the order.  As recently as April 8, 2022, the pumps still had the words "ultimate," "silver," "invigorate," and "AMOCO" on them.  The street sign still has the words "silver" and "ultimate" on it.  The poles, pumps, convenience store, and trash cans still have the trademarked green color.  These are all in violation of this court's August 31, 2021 injunction order.

Accordingly, the court finds that defendant is in contempt of its August 31, 2021 order.  The court will authorize plaintiffs, together with their representatives, to enter the property and to remove and/or cover up the enjoined trademarks with the aid of the United States Marshal Service if necessary.